# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AP GLOBAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civil Action No. 1:24-cv-2535 |
| THE INDIVIDUALS, | ) |
| CORPORATIONS, LIMITED | ) |
| LIABILITY COMPANIES, | ) |
| PARTNERSHIPS, AND | ) JURY TRIAL DEMANDED |
| UNINCORPORATED ASSOCIATIONS | ) |
| IDENTIFIED ON SCHEDULE A TO | ) |
| THE COMPLAINT, | ) |
| | ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

Plaintiff, AP Global, Inc., by and through its undersigned counsel, hereby files this Second Amended Complaint[1] for design patent infringement, false designation of origin under the Lanham Act, and violation of the Illinois Uniform Deceptive Trade Practices against defendants The Individuals, Corporations, Limited Liability Companies, Partnerships, And Unincorporated Associations Identified On Schedule A To The Complaint ("Defendants"). In support thereof, Plaintiff states as follows:

---

[1] This Second Amended Complaint is being filed pursuant to the Court's April 1 and 3, 2024 Orders issued in this action, Dkt. 19 and 20 respectively. Consistent with the Court's April 1 Order granting Plaintiff's Motion to Seal (Dkt. 19) Docket Entries 2 (Ex. 1 to Complaint; the Asserted Patent), 3 (Schedule A to Complaint), 4-1 (Ex. 1 to Amended Complaint; the Asserted Patent), and 4-4 (Schedule A to Amended Complaint), to maintain the sensitive nature of this information given the circumstances of this counterfeiting case, these documents have not been re-filed herewith. The exhibits and Schedule A to the original Complaint in this action (Dkt. 1) are the same as those submitted with Plaintiff's Amended Complaint (Dkt. 4), and these are the same exhibits to the present Second Amended Complaint.

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the patent infringement claim in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 101 *et seq.*, 28 U.S.C. §§ 1338(a) and 1331. The Court has original subject matter jurisdiction over the false designation of origin claim asserted in this action pursuant to the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., (the "Lanham Act"), and 28 U.S.C. §§ 1338(a) and 1331. The Court has supplemental jurisdiction over Plaintiff's Illinois Uniform Deceptive Trade Practices Act claim pursuant to 28 U.S.C. § 1367(a).

2. Personal jurisdiction exists over Defendants in this Judicial District because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in this Judicial District, and/or derive substantial revenue from business transactions in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of Illinois such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

3. In addition, Defendants' illegal counterfeiting and infringement actions cause injury to Plaintiff in Illinois and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Illinois and this judicial District.

4. For example, Defendant Internet Stores accept orders of counterfeit products from, and offers to ship such products to, Illinois addresses located in this Judicial District.

5. Moreover, upon information and belief, Defendants are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Illinois, in this Judicial District, through accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by

or associated with Defendants, their respective officers, employees, agents, servants, and persons in active concert or participation with any of the foregoing. Consumers in the U.S., including Illinois (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, can communicate with Defendants regarding Defendants' listings for counterfeit products, can place orders for such counterfeit products, can purchase counterfeit products for delivery in the U.S., and can receive associated invoices.

6. Defendants have transacted business with consumers located in the U.S., including Illinois (and more particularly, in this Judicial District), for the sale and shipment of counterfeit products.

7. Venue is proper in this Judicial District because "a substantial part of the events or omissions giving rise to [Plaintiff's] claim[s] occurred" in this Judicial District. 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

8. Plaintiff specializes in the design, manufacturing, sale, and distribution of unique products with innovative patented designs.

9. Defendants seek to capitalize upon Plaintiff's proprietary patented technology and designs by offering for sale and selling unauthorized and unlicensed infringing products embodying designs that infringe Plaintiff's U.S. design patent (the "Infringing Products").

10. On information and belief, Defendants design their Internet stores to appear to be selling genuine versions of Plaintiff's products, while they are actually selling Infringing Products to unknowing consumers.

11. On information and belief, Defendants attempt to avoid liability by going to great lengths to conceal both their identity and the full scope and interworking of their operations. Such

efforts include, *inter alia*, changing the names of their stores multiple times, opening new stores, helping others open stores, and making subtle changes to their Infringing Products.

12. Plaintiff is forced to file this action to combat Defendants' infringement as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet.

13. Plaintiff has been, and continues to be, irreparably harmed by Defendants' infringement of Plaintiff's design patent and Plaintiff's associated trade dress. Plaintiff, therefore, seeks injunctive relief to halt such infringement and irreparable harm.

14. Plaintiff also seeks monetary relief for the injury that it is sustaining.

## THE PARTIES

**Plaintiff**

15. Plaintiff is a U.S. corporation with a principal place of business located in the U.S.

16. Plaintiff is the creator and seller of high-quality, innovatively designed, products ("Plaintiff's Product"). Plaintiff's Product embodies Plaintiff's patented design as claimed in Plaintiff's asserted patent. A true and correct copy of Plaintiff's asserted patent is attached hereto as Exhibit 1.

**Defendants**

17. Defendants are individuals and business entities who reside in foreign jurisdictions. Defendants conduct business or assist in business activity conducted throughout the United States (including within the State of Illinois and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of the Infringing Products using counterfeit and infringing versions of Plaintiff's patented design as claimed in Plaintiff's asserted patent, and of Plaintiff's related trade dress in the configuration of Plaintiff's Product. Each Defendant has targeted the United States, including Illinois specifically, by selling or offering for

sale, or knowingly assisting in the selling or offering for sale, Infringing Products to U.S. consumers, including consumers located in Illinois, via various online stores.

18. Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine versions of Plaintiff's Product, while they are actually selling inferior, unauthorized imitations of Plaintiff's Product. The Defendant Internet Stores share unique identifiers, such as the following: common design elements, the same or similar counterfeit products that they offer for sale, similar counterfeit product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced counterfeit products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operations make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

19. Defendants manufacture, advertise, offer for sale, sell, import, and distribute the Infringing Products.

20. The Infringing Products incorporate unauthorized, infringing versions of Plaintiff's patented design as claimed in Plaintiff's Asserted Patent, and of Plaintiff's trade dress.

**THE PATENT**

21. Plaintiff's asserted patent, U.S. Patent No. D950,950 S, was duly and legally issued by the United States Patent and Trademark Office.

22. The asserted patent is directed to an ornamental design for a product.

23. Plaintiff's product embodying the design claimed in Plaintiff's patent has been commercially successful. Plaintiff has generated and continues to generate substantial revenue in sales of its products that embody the design of Plaintiff's asserted patent.

24. Plaintiff markets its patented product through Plaintiff's online retail store, on-line retain channels such as Amazon, as well as through conventional retail stores.

25. The design of Plaintiff's commercial product embodying the asserted patent differentiates Plaintiff's product from those of Plaintiff's competitors.

26. Plaintiff's asserted patent is currently unexpired, valid, and enforceable.

27. Plaintiff is the lawful assignee of all right, title, and interest in Plaintiff's asserted patent.

28. Plaintiff has not granted Defendants a license and has not otherwise granted Defendants permission to make, use, sell, offer to sell, or import the products or other items embodying the design claimed in Plaintiff's asserted patent.

## PLAINTIFF'S TRADE DRESS

29. Plaintiff protects its substantial investment in innovation and design from imitators with its intellectual property rights.

30. Plaintiff manufactures and sells products bearing a distinctive trade dress in the design of the product.

31. As a result of Plaintiff's widespread use and display of the trade dress, (a) the public has come to recognize Plaintiff's Product bearing the trade dress as emanating from Plaintiff (b) the public recognizes that products bearing the trade dress constitute high quality products that

conform to the specifications created by the Plaintiff, and (c) the trade dress has established strong secondary meaning and extensive goodwill.

32. Plaintiff's trade dress is not functional. The design features embodied by the trade dress are not essential to the function of the product. The trade dress is not in its particular shape because it works better in that shape. There are numerous alternative shapes and structures of Plaintiff's product.

33. Further, the design features of the trade dress are not comparatively simple or inexpensive to manufacture because the elements are complex. The design features of the trade dress do not affect the quality of the product. The design of the trade dress is not a competitive necessity.

34. The trade dress is an invaluable asset essential to Plaintiff's success and represents the design of its signature products.

35. Subsequent to Plaintiff's use and adoption of the trade dress, Defendant has developed, manufactured, imported, advertised, and/or sold products that use a design that is confusingly similar to the trade dress.

36. Plaintiff is informed and believes, and based thereon alleges that Defendant has intended to blatantly copy Plaintiff's proprietary designs and pass off its goods as Plaintiff's high quality products to misappropriate the immense goodwill that Plaintiff has spent enormous time, effort, and expense to cultivate in the marketplace. Defendant's use of the trade dress in commerce is likely to cause confusion, cause mistake, and to deceive as to an affiliation, connection, or association of Defendant and/or its products with Plaintiff, when there is none.

37. Defendant's acts complained of herein have caused Plaintiff to suffer irreparable injury to its business. Plaintiff will continue to suffer substantial loss and irreparable injury unless and until Defendant is enjoined from its wrongful actions complained of herein.

38. Plaintiff is informed and believes, and on that basis alleges that Defendant's acts complained of herein are willful and deliberate.

## DEFENDANTS' UNLAWFUL CONDUCT

39. The success of Plaintiff's business, and of Plaintiff's Product in particular, has resulted in significant infringement of Plaintiff's asserted patent and Plaintiff's trade dress. Consequently, Plaintiff has recently instituted a worldwide program to investigate suspicious online marketplace listings. In recent years, Plaintiff has identified dozens of fully interactive, commercial Internet stores on various e-commerce platforms, which are offering for sale to consumers, in this Judicial District and throughout the United States, products that infringe Plaintiff's intellectual property rights.

40. Internet websites such as those used by Defendants to sell Infringing Products are estimated to receive tens of millions of visits per year and generated over $509 billion in annual online sales in 2016 alone. *See* Report from the U.S. Department of Homeland Security to the President of the United States, COMBATTING TRAFFICKING IN COUNTERFEIT AND PIRATED GOODS, published January 24, 2020 (available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf).

41. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the aggregate manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2020 was over $1.3 billion. (*See* Ex. 2 at 2). Internet websites like the Defendant Internet Stores are also estimated to contribute

to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (*See* Ex. 3 at 8).

42. E-commerce retail platforms such as those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to regularly use false names and addresses when registering with these e-commerce retail platforms.

43. Defendants facilitate sales of the Infringing Products by designing their on-line storefronts so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Defendants' online storefronts appear sophisticated and accept payment in U.S. dollars via credit cards, Amazon Pay, Western Union, and/or PayPal.

44. On information and belief, Defendants operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operating in spite of enforcement efforts.

45. Defendants often include on their on-line storefronts content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.

46. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicators of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

47. On information and belief, Defendants have engaged in fraudulent conduct when registering their on-line storefronts by providing false, misleading, and/or incomplete information to Amazon and potentially other on-line platforms.

48. On information and belief, Defendants have anonymously registered and maintained aliases to prevent discovery of their true identity and the scope of their e-commerce operation.

49. On information and belief, Defendants also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.

50. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling infringing products on e-commerce platforms such as Amazon. On information and belief, such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identity and the full scope and interworking of their operation, and to avoid being shut down.

51. Infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operating in spite of enforcement efforts. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the Defendant Internet Stores

52. Analysis of financial account transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

53. Here, on information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such off-shore accounts based outside of the jurisdiction of this Court.

54. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment that they may be liable for due to their infringement of intellectual property rights.

55. Prior to and contemporaneous with their counterfeiting and infringement actions alleged herein, Defendants had knowledge of Plaintiff's ownership of Plaintiff's asserted patent, Plaintiff's trade dress and of the popularity and success of Plaintiff's Product, and in bad faith proceeded to make, use, offer for sale, sell, and/or import the Infringing Products.

56. Defendants have been engaging in the illegal counterfeiting and infringement actions alleged herein knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's patent rights, and otherwise in bad faith.

57. Defendants' use of the Plaintiff's trade dress in connection with advertising, distribution, offering for sale, and/or sale of counter/infringing products, including into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## DESIGN PATENT INFRINGEMENT

58. Plaintiff hereby re-alleges and incorporates herein by reference each of the allegations set forth in the preceding paragraphs.

59. Defendants make, use, sell, offer for sale, and/or import into the United States products that infringe Plaintiff's asserted patent.

60. In the eye of an ordinary observer, the design of Defendants' Infringing Products and the design claimed in Plaintiff's asserted patent are substantially the same. Said sameness deceives prospective purchasers and induces them to purchase Defendants' products supposing them to have come from Plaintiff.

61. Defendants' Infringing Products misappropriate the novelty of the design claimed in Plaintiff's asserted patent that distinguished Plaintiff's patented design from the prior art.

62. Defendants sell, offer for sale, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the ornamental design claimed in Plaintiff's asserted patent.

63. Defendants have infringed Plaintiff's asserted patent through the acts complained of herein and will continue to do so unless enjoined by this Court.

64. Plaintiff has provided Defendants with notice of Plaintiff's rights in Plaintiff's asserted patent by compliance with the patent marking statute, 35 U.S.C. § 287.

65. Defendants' infringement of Plaintiff's asserted patent has been willful.

66. Defendants' infringement of Plaintiff's asserted patent has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful rights under U.S. patent law to exclude others from making, using, selling, offering for sale, and importing the design claimed in Plaintiff's asserted patent.

67. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

68. Plaintiff is entitled to recover damages adequate to compensate Plaintiff for Defendants' infringement of Plaintiff's asserted patent, including Defendants' profits pursuant to 35 U.S.C. § 289.

69. Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

**COUNT II**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. §1125(a))**

70. Plaintiff hereby re-alleges and incorporates herein by reference each of the allegations set forth in the preceding paragraphs.

71. The Infringing Products sold and offered for sale by Defendants are of the same nature and type as Plaintiff's Product sold and offered for sale by Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

72. By misappropriating and using the Plaintiff's trade dress, Defendants misrepresent and falsely describe to the general public the origin and source of the Infringing Products and create a likelihood of confusion by consumers as to the source of such merchandise.

73. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Infringing Products creates express and implied misrepresentations that the Infringing Products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

74. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's trade dress, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

75. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT III
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES (815 ILCS 510)

76. Plaintiff hereby re-alleges and incorporates herein by reference each of the allegations set forth in the preceding paragraphs.

77. The Infringing Products sold and offered for sale by Defendants are of the same nature and type as Plaintiff's Product sold and offered for sale by Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

78. Subsequent to Plaintiff's use and the development of secondary meaning in that trade dress, Defendant has developed, manufactured, imported, advertised, and/or sold products that use trade dress that is confusingly similar to Plaintiff's trade dress identified herein.

79. By misappropriating and using Plaintiff's trade dress, Defendants misrepresent and falsely describe to the general public the origin and source of the Infringing Products and create a likelihood of confusion by consumers as to the source of such merchandise.

80. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Infringing Products creates express and implied misrepresentations that the Infringing Products were created, authorized or approved by the Plaintiff, all to the Defendants' profit and to Plaintiff's great damage and injury.

81. Defendants' aforesaid acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 *et seq.*, in that Defendants' use of the Plaintiff's trade dress and genuine product images, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

82. Plaintiffs have no adequate remedy at law and, if the Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

1. That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

(i) making, using, importing, offering for sale, and selling any products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the design claimed in Plaintiff's asserted patent and Plaintiff's trade dress; and

(ii) effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

(iii) aiding, abetting, contributing to, or otherwise assisting anyone in infringing Plaintiff's asserted patent; and

(iv) passing off, inducing or enabling others to sell or pass off any Infringing Products as genuine products made and/or sold by the Plaintiff; and

(v) committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

(vi) further infringing the Plaintiff's trade dress and damaging Plaintiff's goodwill;

(vii) competing unfairly with Plaintiff in any manner;

(viii) shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, or colorable imitations thereof;

(ix) using, linking to, transferring, selling, exercising control over, or otherwise owning or

operating the Defendant Internet Stores, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Infringing Products;

(x) operating and/or hosting any websites and/or otherwise any domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product infringing the Plaintiff's trade dress or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's trade dress.

2. Directing that Defendants deliver for destruction all products that include the design claimed in Plaintiff's asserted patent as well as all means for making such designs.

3. Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third-parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

   a) Locate all accounts connected to Defendants, including, but not limited to, any Amazon accounts;

   b) Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

   c) Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of such Order.

4. Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks,

savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, including, without limitation, Amazon, with whom such newly identified accounts are maintained, to carry out the following activity:

   a) Locate all accounts connected to Defendants, including, but not limited to, any Amazon accounts;

   b) Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

   c) Transfer any funds restrained in such accounts, up to the amount of any monetary judgment that the Court may see fit to enter against Defendants in this case, to Plaintiff within ten (10) business days of receipt of this Order.

5. That Defendants, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff's a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court.

6. Entry of an order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, Web hosts, domain- name registrars and domain-name registries or their administrators that are provided with notice of the injunction, cease facilitating access to any or all domain names and websites through which Defendants engage in the sale of Infringing Products infringing Plaintiff's asserted patent and Plaintiff's trade dress;

7. Awarding Plaintiff such damages as it may prove at trial that are adequate to compensate Plaintiff for Defendants' infringement of Plaintiff's asserted patent, and awarding Plaintiff all of the profits realized by Defendants, or others acting in concert

or participation with Defendants, from Defendants' unauthorized use and infringement of Plaintiff's asserted patent.

8. Awarding Plaintiff all other damages that it may be entitled to under applicable law.

9. Awarding Plaintiff its costs in bringing this action.

10. Awarding Plaintiff any further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues triable as of right to a jury. Fed. R. Civ. P. 38(b).

Date: April 4, 2024

Respectfully submitted,

/s/ Theodore J. Chiacchio
Theodore J. Chiacchio (Bar No. 6332547)
**CHIACCHIO IP, LLC**
307 North Michigan Avenue, Suite 2011
Chicago, Illinois 60601
Tel: (312) 815-2384
Email: tchiacchio@chiacchioip.com

*Counsel for Plaintiff*